25 F.3d 1049
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Lon PALUSHAJ; Rusha Palushaj, Petitioners-Appellants,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent-Appellee
 No. 93-3196.
 United States Court of Appeals, Sixth Circuit.
 May 17, 1994.
 
 Before: MERRITT, Chief Judge; GUY and BOGGS, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 Lon and Rusha Palushaj, ethnic Albanian citizens of Yugoslavia, contest the denial of their applications for asylum in the United States. We find that the Board of Immigration Appeals (the "Board") did not err in its decision to deny asylum to the Palushajs a year and a half ago. However, we also find that the Palushajs have alleged the existence of new conditions in Yugoslavia and of new evidence relating to Lon Palushaj sufficient to warrant that they be allowed to petition the Board to reopen their applications for asylum. We therefore remand this case to the Board to consider the Palushajs' motion to reopen, should they file one, and to assess the effect of the new conditions and evidence on their applications for asylum.
 
 
 2
 Lon and Rusha Palushaj, husband and wife, are illegal aliens. They entered the United States without inspection in January 1987 after being denied a visa by a United States Consulate in Yugoslavia. The Palushajs come from the Kosovo region, the majority of whose inhabitants are of Albanian ethnicity. Kosovo was and is part of Serbia and thus still remains within the Serb-dominated state of Yugoslavia. The Palushajs have three children, all born in the United States and therefore U.S. citizens.
 
 
 3
 On January 8 and 12, 1988, the Immigration and Naturalization Service issued Orders to Show Cause to the Palushajs, charging them with deportability as illegal aliens under Sec. 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1251(a)(2). The Palushajs conceded deportability but received additional time to file applications for asylum. After an asylum hearing on June 10, 1988, an Immigration Judge denied those applications on June 23, 1988. On November 30, 1992, the Board of Immigration Appeals affirmed that decision. On appeal, the Palushajs seek review of the Board's final order of deportation.
 
 
 4
 In their asylum requests, the Palushajs alleged that Lon Palushaj[1] had been involved, in both Yugoslavia and Switzerland, in demonstrations and other activities against the Yugoslav government and in favor of the civil rights and cultural autonomy of ethnic Albanians within Yugoslavia and related goals. Palushaj testified to several instances of questioning by the Yugoslav Secret Police, which he argued demonstrated that the Police knew of his activities. He alleged that the last time he entered Yugoslavia, in December 1986, his brother informed him that the Police were looking for him. As a result, he fled to the United States by way of Macedonia and then Canada.
 
 
 5
 The Immigration Judge denied the request for asylum essentially for two reasons. First, he found that Palushaj had not demonstrated that the Police knew about his activities specifically, and that he had therefore not demonstrated, as required by 8 U.S.C. Sec. 1101(a)(42), that he held a well-founded fear of persecution on account of his nationality or political beliefs.
 
 
 6
 Second, that finding was heavily influenced by the judge's determination that Palushaj was not a credible witness. In his asylum application, Palushaj stated that when he last entered Yugoslavia he was immediately detained by the Police and questioned repeatedly about his pro-Albanian activities. At his hearing, however, Palushaj testified that on that visit he was not questioned but was told by his brother that the Police were looking for him. Palushaj testified that the inconsistency was the result of his poor grasp of English and subsequent difficulty working with the translator who helped him prepare the written application, but the Immigration Judge found no real evidence that there had been a language problem. In the absence of documentary evidence that Palushaj was an individualized target of persecution, Palushaj's own description of his circumstances weighed heavily, and the finding that he was not credible weighed heavily against him.
 
 
 7
 The Board affirmed the Immigration Judge's decision on the same grounds. Based on the record before us, we cannot say that the Board was clearly erroneous in either of these findings. Absent the circumstances discussed below, therefore, we would be required to affirm the Board's dismissal of Palushaj's appeal from the decision of the Immigration Judge.
 
 
 8
 In reviewing the record before us, however, we are aware of the change of circumstances that has occurred since the Immigration Judge reviewed Palushaj's claim for asylum in June of 1988. Since that time Yugoslavia has broken into several successor states and has been shaken by bloody ethnic and religious war. We take judicial notice, per Fed.R.Evid. 201(b) and (c), both of the well-known general circumstances in that region as well as of accounts of violent conduct toward and persecution of ethnic Albanians. See, e.g., Frank Jossi, Kosova May Be Next Balkan Fight, MINNEAPOLIS STAR TRIBUNE, March 2, 1994, at 10A ("over the past few years in Kosova ... the Yugoslav government has gradually stepped up repressive activities against the overwhelmingly ethnic Albanian province"); Peter Dammann, Europe: Fingers on the Trigger, THE GUARDIAN, Feb. 4, 1994, at 12 (Serb rulers use propaganda, cultural repression, economic warfare, and physical terror against Albanians in Kosovo).
 
 
 9
 Because of these changes, the factual conclusions of the Immigration Judge in 1988 regarding the Kosovo region do not reflect the current state of affairs, and INS regulations allow for a motion to reopen an asylum case so that present conditions may be considered. 8 C.F.R. Secs. 3.2 and 3.8; Dokic v. INS, 899 F.2d 530, 532 (6th Cir.1990).
 
 
 10
 The Board itself noted, in its dismissal of the appeal, that "the state of affairs in the former Yugoslav federation has been and is in flux and that the situation is 'extremely uncertain.' " The Board stated, however, that neither party had raised this issue. We note that the Board made its decision more than four years after the Immigration Judge initially denied the applications, and that another year and a half have passed since then--a period which has seen the sharpest deterioration of conditions in the Balkans. Even if we were to find that Palushaj defaulted by not making a motion to reopen in 1992, therefore, he would still be entitled to move in 1994 to have his case reopened in order to consider Yugoslav history since late 1992.
 
 
 11
 We are also concerned about new evidence which Palushaj brings forth on this appeal, to the effect that he personally faces persecution if returned to Yugoslavia. Palushaj's brief to this court includes what appears to be a letter from an attorney in Yugoslavia, informing Palushaj that he is being investigated for "counter-revolutionary" activities and could face up to fifteen years' imprisonment. The letter indicates that this attorney has taken the matter over from a previous lawyer, also of Albanian nationality, who was allegedly killed by the Serbian police. If genuine, this document might fill what the Immigration Judge found to be a gap in Palushaj's case: documentary evidence of a likelihood of persecution directed at him personally. Although the INS contends that the letter, if credible, indicates only that Palushaj faces prosecution, not persecution, "counterrevolution" is a classic political crime. The document may therefore be genuine evidence of persecution.
 
 
 12
 An asylum applicant is entitled to bring such new evidence to the Board by moving to reopen the proceedings pursuant to 8 C.F.R. Secs. 3.2 and 3.8, and where possible has a duty to do so before the Board reviews the Immigration Judge's decision. In this case, the letter is dated December 9, 1992 ("09.12.92," in the European style), some nine days after the Board dismissed the appeal. It was apparently faxed to Palushaj on the following day, but he clearly received it too late to have it included in the Board's review of the record.
 
 
 13
 We therefore find no error in the Board's previous decision but in light of new conditions REMAND the case to the Board with instructions to grant the Palushajs 30 days within which to file a motion to reopen on the two grounds of change of circumstances and newly discovered evidence. If the Palushajs properly move to reopen, the Board should consider the changes in the Balkan region, the new evidence alleged by Palushaj, and the effect of both on the asylum requests. We note that this same reasoning was followed in Ivezaj v. INS, 940 F.2d 660 (table), No. 90-3980, 1991 WL 151157 (6th Cir., Aug. 8, 1991), also involving a Yugoslav citizen of Albanian ethnicity. See also Dokic v. INS, 899 F.2d 530 (6th Cir.1990).
 
 
 14
 This case is not recommended for publication in the Federal Reporter.
 
 
 
 [1]
 Because Rusha's application for asylum is derivative of her husband Lon's, the remainder of this discussion will be about Lon